IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

|  |  |  |
|---|---|---|
| LIONEL LEE PRINCE, | * | |
| Plaintiff, | * | |
| v. | * | Case No.: GJH-20-535 |
| WARDEN ALLEN GANG,<br>OFFICER BOLA AJAO,<br>SGT. ERIC WALKER,<br>CORIZON HEALTH,<br>JOSEPH JEFCOAT,<br>SGT. CHUKWUMA NJOKU,<br>KIMBERLY STEWART, and<br>MOTUNRAYO ADEGORUSI, | *<br>*<br>*<br>*<br>* | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Self-represented Plaintiff Lionel Lee Prince, an inmate presently incarcerated at Western Correctional Institution ("WCI") in Cumberland, Maryland, filed this 42 U.S.C. § 1983 action against Warden Allen Gang, Correctional Officer Bola Ajao, Sgt. Eric Walker, Sgt. Chukwuma Njoku, Case Manager Joseph Jefcoat, and Hearing Officer Kimberly Stewart (collectively, the "Correctional Defendants"), as well as Corizon Health, Inc. ("Corizon") and Motunrayo Adegorusi, NP (collectively, the "Medical Defendants").[1]  ECF No. 1.  In the Complaint, which was amended and supplemented, Prince alleges that he was subjected to excessive force, sexual assault, retaliation, and deliberate indifference to his medical needs.  ECF Nos. 1, 3, 5, 6.  He seeks monetary damages and injunctive relief.  *Id.*

---

[1] The Clerk shall be directed to amend the docket to reflect Defendants' full and correct names.

1

On March 5, 2021, the Medical Defendants filed a Motion to Dismiss or, Alternatively, for Summary Judgment, ECF No. 19, which Prince opposed, ECF No. 22.[2] On June 14, 2021, the Correctional Defendants filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment, ECF No. 31, which Prince also opposed, ECF No. 34.[3] Thereafter, Prince filed a third Motion for Appointment of Counsel, ECF No. 38, his first two having been denied without prejudice.

No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2021). For the reasons set forth below, the Medical and Correctional Defendants' Motions, construed as motions for summary judgment, shall be granted, and Prince's Motion for Appointment of Counsel shall be denied.[4]

## I.     BACKGROUND

Prince claims that on January 21, 2020, while housed at Jessup Correctional Institution ("JCI"), he was having difficulty breathing in his cell, and his cellmate asked correctional officers for help. Amend. Compl., ECF No. 3 at 1-2.[5] At that time, Sgt. Walker and two other correctional officers began forcefully closing the food slot on Prince's cellmate's arm. *Id.* Prince avers that when he tried to help his cellmate, Sgt. Walker deployed pepper spray and closed the food slot on Prince's hand. *Id.*

---

[2] The Medical Defendants subsequently filed a Motion for Extension to File a Reply. ECF No. 25. However, as summary judgment will be granted in their favor, the Motion shall be denied as moot.

[3] Prior to the filing of the Correctional Defendants' Motion, Prince filed a Motion for Entry of Default, arguing that the Correctional Defendants failed to timely respond to his Complaint. ECF No. 30. Although their response was originally due by March 15, 2021, the Correctional Defendants sought, and were granted, additional time to file their response, up to and including June 15, 2021. *See* ECF Nos. 21, 27. Thus, their Motion was timely filed, and Prince is not entitled to judgment on this ground.

[4] In addition, the Motion to Strike Entry of Appearance, ECF No. 39, filed by counsel for the Division of Correction, shall be granted.

[5] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

According to the Correctional Defendants, prior to the incident at issue, Prince and his cellmate had been attempting to keep the food slot open and were trying to kick a security barricade in front of their cell. *See* Notice of Inmate Rule Violation, ECF No. 31-3 at 2; Video 01212020 at 0:06-2:2. A correctional officer ordered them to remove their arms from the slot, but both inmates refused to comply. Inmate Hearing Record, ECF No. 31-3 at 15; Video 01212020 at 0:33-0:36. When the officer and Sgt. Walker attempted to close the slot, Prince's cellmate struck both officers with a closed fist. ECF No. 31-3 at 2; Video 01212020 at 0:38-2:20. It took four officers to control the situation and Sgt. Walker disbursed a one-second burst of pepper spray into the cell. *Id.* Both inmates were then escorted to the medical area for evaluation. *See* Med. Records, ECF No. 31-5. During the visit, the medical provider noted swelling but no redness or bruises on Prince's hand, and x-rays indicated no fractures, sprains, or abnormality. *Id.* In addition, the provider noted that Prince's lungs were clear. *Id.*

Subsequently, both Prince and his cellmate received infractions for holding the feed slot open and disobeying orders. *See* ECF No. 31-3 at 2. On January 30, 2020, Prince and his cellmate were escorted to the adjustment room for the infraction hearing. *Id.* at 5. Prince claims that on the way to the hearing, Officer Ajao directed him to come inside the staff-only bathroom and Officer Ajao exposed his genitals. ECF No. 1 at 3. Prince quickly informed Sgt. Njoku and claims that he and his cellmate were forced to stay in their cell thereafter, in retaliation for requesting to report the incident. *Id.*

The Correctional Defendants disagree with Prince's recollection of the events. According to them, Officer Ajao was in the hearing room when he saw Prince enter the staff-only bathroom. ECF No. 31-3 at 5. Officer Ajao left the adjustment room to remove Prince from the bathroom and to inspect the bathroom for any supply items that may have been

3

removed. *Id.* When Officer Ajao ordered Prince to return to the area near the adjustment room, Prince again wandered towards the staff-only bathroom, stepping briefly into the bathroom while Officer Ajao was inside. After Officer Ajao ordered Prince outside, Prince became belligerent and threatened Officer Ajao with a Prison Rape Elimination Act ("PREA") complaint. *Id.* Officer Ajao then issued an infraction, *id.* at 8, which Prince claims was done in retaliation because Prince threatened to file a PREA complaint, ECF No. 5 at 3. Sgt. Njoku escorted Prince to his tier. ECF No. 31-3 at 8.

On the way to the housing unit, Prince pulled away from Sgt. Njoku and refused to lock into his cell. ECF No. 31-3 at 8. Prince then charged toward Officer Ajao. *Id.* Eventually, other officers assisted in placing Prince in his cell. *Id.* After Prince was secured, Sgt. Njoku issued an infraction, *id.*, which Prince claims was also done in retaliation for his PREA complaint threat, ECF No. 5 at 3.

Due to the January 30, 2020 incident, Prince's adjustment hearing for the January 21, 2020 infraction was postponed. *See* Decl. of Stewart, ECF No. 31-7. A hearing was eventually held on February 11, 2020, and after reviewing video evidence, the hearing officer found Prince guilty of the infraction stemming from the January 21, 2020 incident. *See id.*; ECF No. 31-3 at 11-17.

With regard to the January 30, 2020 infractions, Prince pleaded guilty at a hearing held on February 25, 2020, before Defendant Stewart. *Id.* at 20-24. Because Prince received two infractions during the same continuous incident, the infractions were merged for sentencing purposes. ECF No. 31-7 at 2. Due to Prince's guilty plea, his appeal rights were limited. *Id.* at 1. Nonetheless, Prince claims that Defendant Stewart arrived at her ruling in retaliation for the

three incidents involving Sgt. Walker, Officer Ajao, and Sgt. Njoku; and that the Warden also retaliated by failing to consider his appeal.  ECF No. 5 at 3.

Prince next claims that Corizon denied his requests for medical records on April 2, 12, and 14, 2020.  ECF No. 5 at 4.  He also alleges that Corizon allowed its staff to use the COVID-19 pandemic as a means of denying or delaying medical care, and for treating chronic pain with "gentle" over-the-counter pain relievers rather than prescription medication.  *Id.* at 4-5.

According to the Medical Defendants, Prince was regularly seen at JCI for chronic testicular pain, asthma, and hypertension.  Med. Records, ECF No. 19-4 at 8, 22, 40-41, 47-52.  He also has a history of antisocial personality disorder, as well as opioid and alcohol dependence.  *Id.* at 22.  On January 31, 2020, medical staff increased Prince's prescription for Elavil, a tricyclic antidepressant used to treat depression and mood disorders as well as nerve and musculoskeletal pain.  *Id.* at 41; Decl. of Adegorusi, ECF No. 19-3, ¶10.  In addition, Doxycycline was prescribed to rule out an infected hydrocele.  ECF No. 19-4 at 41.

On March 2, 2020, NP Adegorusi saw Prince during a chronic care visit, at which time he requested Ultram and Neurontin.  *Id.* at 47-52.  Ultram (or Tramadol) is an opioid-like pain medication whose side effects can include psychological and physical addiction, sedation, tolerance, and respiratory depression.  ECF No. 19-3, ¶15.  Its extended use sometimes results in lower effectiveness for pain control.  *Id.*  Similarly, Neurontin, which can be used to treat nerve pain, has a potential for being misused to achieve a euphoric and/or sedative effect.  *Id.*, ¶17.  Thus, it carries a high risk for addiction and dependence, particularly in people with a history of substance abuse.  *Id.*  Because of the risks associated with long-term use of these medications, NP Adegorusi did not believe either medication was appropriate for Prince at that time, and that Elavil would be more appropriate for his chronic testicular pain.  *Id.*, ¶18.

NP Adegorusi renewed Prince's Elavil prescription so that it would be effective from March 2, 2020, through May 13, 2020. Electronic Med. Order, ECF No. 19-5. It appears, however, that a discrepancy caused the prescription to be effective only on March 2, 2020. ECF No. 19-3, ¶14. NP Adegorusi was not aware of the discrepancy until Prince filed this action. *Id.*

During the chronic care visit, Prince also complained of hot flashes, joint ache, fever, malaise, and a cough. *Id.* at 47-52. Upon examination, however, he did not appear to be in any acute distress. *Id.* Nonetheless, NP Adegorusi ordered Robitussin, acetaminophen, and Tamiflu for Prince's flu-like complaints. *Id.* NP Adegorusi states that she did not retaliate against Prince at any time and avers that she was not aware of Prince's PREA complaint against Officer Ajao. ECF No. 19-3, ¶¶ 6, 11.

On March 8, 2020, Prince was transferred to WCI. *See* ECF No. 19-4 at 57. Although his medical records reflect that he submitted sick call requests on April 1, 12, and 14, 2020, they do not indicate that he submitted requests for copies of his medical records as he alleges. *Id.* at 95-98.

Between approximately late March 2020 and early June 2020, COVID-19 restrictions were put in place for medical appointments to contain and restrict the spread of COVID-19. Decl. of Benhur Mohammed, M.D., ECF No. 19-6, ¶14. In-person routine medical appointments were temporarily halted, though patients were seen for urgent concerns. *Id.* Chart reviews were performed for chronic care patients, and sick call requests were reviewed and addressed by the medical staff through chart reviews. *Id.*

On April 22, 2020, a nurse noted that Prince submitted a sick call request complaining of testicular pain. ECF No. 19-4 at 61. Due to COVID-19 restrictions, Prince was not seen but was

referred to a provider for follow-up. *Id.* On April 30, 2020, Dr. James Bertie performed a virtual chart review and renewed Prince's chronic care medications. *Id.* at 63-64.

In-person appointments commenced by early June 2020. On May 13, 2020, Dr. Bernard McQuillan reviewed Prince's sick call requests and prescribed ibuprofen and Elavil for his pain. *Id.* at 65. Corizon staff continued to see Prince regularly from July 29, 2020, to January 16, 2021, just prior to the initiation of this suit. *See id.* at 66-81.

Prince's final claim is that WCI correctional staff used the COVID-19 pandemic to hinder his access to the judicial process. ECF No. 5 at 4. Specifically, he avers that Defendant Jefcoat prohibited Prince's attorney from visiting or calling, and WCI staff prevented Prince from accessing legal materials even though "there was no case of COVID-19 at WCI." *Id.*

According to the Correctional Defendants, the COVID-19 pandemic caused the state and federal governments to prohibit travel and access to court systems. *See* Operations Message, ECF No. 31-3 at pg. 27. As a result, the Department of Public Safety and Correctional Services prohibited unnecessary movement within the Division of Correction and severely restricted visitor access. *See id.* at 27-29; Decl. of Jefcoat, ECF No. 31-9. However, attorneys were permitted to meet inmates "virtually" or via telephone conference upon notification to the institution. ECF No. 31-3 at 26, 30. Defendant Jefcoat avers that he never prohibited Prince's access to his counsel, and that the first request for Prince to meet with his attorney was received on July 2, 2020. ECF No. 31-9.

## II.    STANDARDS OF REVIEW

A motion to dismiss pursuant to Rule 12(b)(6) "tests the sufficiency of the claims pled in a complaint." *Paradise Wire & Cable Defined Benefit Pension Plan v. Weil*, 918 F.3d 312, 317 (4th Cir. 2019). To overcome a Rule 12(b)(6) motion, a complaint must allege sufficient facts to

state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

In evaluating the sufficiency of the plaintiff's claims, "a court 'must accept as true all of the factual allegations contained in the complaint,' and must 'draw all reasonable inferences [from those facts] in favor of the plaintiff.'" *Retfalvi v. United States*, 930 F.3d 600, 605 (4th Cir. 2019) (alteration in original) (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011)). However, the complaint must contain more than "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement[.]" *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). Accordingly, in ruling on a motion brought under Rule 12(b)(6), a court "separat[es] the legal conclusions from the factual allegations, assum[es] the truth of only the factual allegations, and then determin[es] whether those allegations allow the court to reasonably infer that 'the defendant is liable for the misconduct alleged.'" *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012) (quoting *Iqbal*, 556 U.S. at 1949–50).

*Pro se* complaints must be construed liberally and must be "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). "Dismissal of a pro se complaint for failure to state a valid claim is therefore only appropriate when, after applying this liberal construction, it appears '*beyond doubt* that the plaintiff can prove *no set of facts* in support of his claim which would entitle him to relief.'" *Spencer v. Earley*, 278 F. App'x 254, 259–60 (4th Cir. 2008) (emphasis in original) (quoting *Haines v. Kerner*, 404 U.S. 519, 521 (1972)). However, despite this liberal construction

requirement, "[p]rinciples requiring generous construction of *pro se* complaints are not . . . without limits." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). Courts are not required to "conjure up questions never squarely presented to them" nor "construct full blown claims from sentence fragments." *Id.*

The motions filed by the Medical and Correctional Defendants are styled as motions to dismiss or in the alternative, for summary judgment. If the Court considers materials outside the pleadings, the Court must treat a motion to dismiss as one for summary judgment. Fed. R. Civ. P. 12(d). When the Court treats a motion to dismiss as a motion for summary judgment, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." *Id.* When the moving party styles its motion as a "Motion to Dismiss or for Summary Judgment," as is the case here, and attaches additional materials to its motion, the nonmoving party is, of course, aware that materials outside the pleadings are before the Court, and the Court can treat the motion as one for summary judgment. *See Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 260–61 (4th Cir. 1998). Further, the Court is not prohibited from granting a motion for summary judgment before the commencement of discovery. *See* Fed. R. Civ. P. 56(a) (stating that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact" without distinguishing pre- or post-discovery).

Summary judgment is proper if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)); *Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299, 302 (4th Cir. 2006). The party moving for summary judgment bears the burden of demonstrating that no genuine dispute exists as to any material facts. *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987). If the moving party demonstrates that there is no evidence to

support the nonmoving party's case, the burden shifts to the nonmoving party to identify specific facts showing that there is a genuine issue for trial. *See Celotex*, 477 U.S. at 322–23.

A material fact is one "that might affect the outcome of the suit under the governing law." *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183 (4th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute of material fact is only "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248–49. However, the nonmoving party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985). The Court may rely only on facts supported in the record, not simply assertions in the pleadings, in order to fulfill its "affirmative obligation . . . to prevent 'factually unsupported claims or defenses' from proceeding to trial." *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) (quoting *Celotex*, 477 U.S. at 323–24). When ruling on a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

Here, because the Court considers evidence submitted by the parties, the Medical and Correctional Defendants' Motions will be reviewed as motions for summary judgment.

## III. DISCUSSION

Prince's Complaint, as amended, asserts: (1) a violation of the Eighth Amendment based on Sgt. Walker's use of excessive force; (2) sexual assault by Officer Ajao; (3) Sgt. Njoku's failure to protect Prince from Officer Ajao; (4) retaliation on the part of Officer Ajao, Sgt. Njoku, Warden Gang, Hearing Officer Stewart, and NP Adegorusi following Prince's threat to file a PREA complaint; (5) Corizon's deliberate indifference to Prince's medical needs; and (6) Case Manager Jefcoat's denial of access to courts. The Court shall address each in turn.

**A. Excessive Force**

The Eighth Amendment proscribes "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. U.S. Const, amend. VIII; *Gregg v. Georgia,* 428 U.S. 153, 173 (1976); *see Estelle v. Gamble*, 429 U.S. 97, 102 (1976); *King v. Rubenstein,* 825 F.3d 206, 218 (4th Cir. 2016). Notably, it "proscribes more than physically barbarous punishments." *Estelle*, 429 U.S. at 103. It also "embodies" the "'concepts of dignity, civilized standards, humanity, and decency . . .'" *Id.* (citation omitted). Thus, the Eighth Amendment "protects inmates from inhumane treatment and conditions while imprisoned." *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996); *cf. DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 989 U.S. 189, 199-200 (1989) (stating that when a state holds a person "against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being"); *John Doe 4 v. Shenandoah Valley Juvenile Center Comm'n*, 985 F.3d 327, 338-39 (4th Cir. 2021).

The Fourth Circuit has observed that "not all Eighth Amendment violations are the same: some constitute 'deliberate indifference,' while others constitute 'excessive force.'" *Thompson v. Virginia*, 878 F.3d 89, 97 (4th Cir. 2017) (quoting *Whitley v. Albers*, 475 U.S. 312, 319-20 (1986)). Here, Prince claims that Sgt. Walker used excessive force when he deployed pepper spray and closed the food slot on Prince's hand.

Whether force used by prison officials was excessive is determined by inquiring if "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992). The Court must look at the need for the application of force, the relationship between that need and the amount of force applied, the extent of the injury inflicted, the extent of the threat to the safety of staff and

11

inmates as reasonably perceived by prison officials, and any efforts made to temper the severity of the response. *Whitley*, 475 U.S. at 321. The absence of significant injury, alone, is not dispositive of a claim of excessive force. *Wilkins v. Gaddy*, 559 U.S. 34 (2010). The extent of injury incurred is one factor in determining whether or not the force used was necessary in a particular situation, but if force is applied maliciously and sadistically, liability is not avoided simply because the prisoner had the good fortune to escape serious harm. *Id.* at 38.

At the time of the incident at issue, the video evidence reflects that Prince and his cellmate were causing a disturbance by keeping the food slot open and trying to kick a security barricade in front of their cell. When a correctional officer ordered them to remove their arms from the slot, both inmates refused to comply. Then, when the officer and Sgt. Walker attempted to close the slot, Prince's cellmate struck both officers with a closed fist, prompting Sgt. Walker to deploy a short burst of pepper spray. Based on this information, Sgt. Walker acted reasonably in his attempt to secure and control Prince and his cellmate. Moreover, Prince was taken to the medical unit immediately thereafter, where providers confirmed that his lungs were clear and he suffered no redness, bruising, fractures, or sprains. In sum, the force used by Sgt. Walker was applied in a good faith effort to maintain or restore discipline and, therefore, he is entitled to summary judgment on this claim.

    **B. Sexual Assault**

Prince alleges that Officer Ajao sexually assaulted him by trying to lure him into the staff-only bathroom and exposing himself. Prince, however, has marshalled no evidence to support this unverified assertion. *Cf. Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991) (explaining that "a *verified* complaint is the equivalent of an opposing affidavit for summary judgment purposes"); *see also* Fed. R. Civ. P. 56(c)(1)(A). Rather, his assertion is contradicted

by Officer Ajao's report, which reflects that Prince went into the staff-only bathroom by himself and was later ordered to leave by Ajao. Because Prince has not provided evidence of sexual assault, summary judgment shall be granted in favor of Officer Ajao on this claim.

### C. Failure to Protect

Next, Prince claims that Sgt. Njoku failed to protect him after he reported Officer Ajao's actions and Sgt. Njoku responded by returning him to his cell. In order to establish a failure to protect claim, a prisoner must make two showings: first, that he suffered significant injury or was "'incarcerated under conditions posing a substantial risk of serious harm;'" and second, that the prison official at issue had a "'sufficiently culpable state of mind.'" *Makdessi v. Fields*, 789 F.3d 126, 133 (4th Cir. 2015) (quoting *Farmer v. Brennan,* 511 U.S. 825, 834 (1994)).

Under the first prong, an objective inquiry, "a prisoner must allege 'a serious or significant physical or emotional injury resulting from the challenged conditions,'" *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003) (quoting *Strickler v. Waters*, 989 F.2d 1375, 1379 (4th Cir. 1993)), "or demonstrate a substantial risk of such serious harm resulting from the prisoner's exposure to the challenged conditions." *De'Lonta*, 330 F.3d at 634 (citing *Helling v. McKinney*, 509 U.S. 25, 33-35 (1993)). Actual knowledge of a substantial risk does not alone impose liability. Where prison officials respond reasonably to a risk, they may be found free of liability. *Farmer*, 511 U.S. at 844.

The second showing is subjective and requires proof of deliberate indifference. *See Thompson*, 878 F.3d at 107. Ultimately, "'the test is whether the [prison officials] know the plaintiff inmate faces a serious danger to his safety and they could avert the danger easily yet they fail to do so.'" *Brown v. N.C. Dep't of Corrs.*, 612 F.3d 720, 723 (4th Cir.

2010) (quoting *Case v. Ahitow*, 301 F.3d 605, 607 (7th Cir. 2002)). To survive summary judgment, plaintiff must show facts sufficient for a reasonable factfinder to conclude that (1) he was exposed to a substantial risk of serious harm and (2) the defendants knew of and disregarded that risk. *Thompson*, 878 F.3d at 107 (citing *Farmer*, 511 U.S. at 834, 837-38) (internal quotations omitted)).

Here, Prince has not asserted that he suffered significant injury. *See* ECF Nos. 1, 3, 5, 6. Moreover, even assuming that he had been sexually assaulted, Prince has not shown that Sgt. Njoku knew that he faced serious danger. Thus, he cannot prevail on this claim and summary judgment in favor of Sgt. Njoku is appropriate.

**D. Retaliation**

To succeed with his retaliation claims against Officer Ajao, Sgt. Njoku, Warden Gang, Hearing Officer Stewart, and NP Adegorusi, Prince must establish three elements: 1) he engaged in protected conduct; 2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and 3) a causal connection exists between the first two elements, *i.e.*, his protected conduct motivated at least in part the adverse action. *See Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 499 (4th Cir. 2005); *Thaddeus-X. v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). If there is no impairment of a plaintiff's rights, however, there is no need for the protection provided by a cause of action for retaliation. Thus, a showing of adversity is essential to any retaliation claim. *Id.* at 599 (citing *Board of Regents v. Roth*, 408 U.S. 564, 576-78 (1972)).

Here, Prince claims that Officer Ajao and Sgt. Njoku issued infractions, that Hearing Officer Stewart and the Warden upheld those infractions, and NP Adegorusi withheld medication because Prince threatened to file a PREA complaint against Officer Ajao. Based on the record,

however, it appears that the correctional officers issued infractions because Prince repeatedly refused to comply with their orders. Indeed, Prince pleaded guilty to the infractions, thus waiving his right to appeal. As for the denial of Prince's requested medication, NP Adegorusi avers that his requests for Tramadol and Neurontin were denied because they were not medically indicated at the time. NP Adegorusi also states that she was not aware of Prince's PREA complaint threats.

In sum, it does not appear that adverse action was taken against Prince for threatening to file a PREA complaint; nor has Prince shown that his rights were impaired. Thus, Defendants are entitled to summary judgment on this claim.

### E. Deliberate Indifference

To the extent Prince alleges that the Medical Defendants denied his requests for medical records, used the COVID-19 pandemic as a means of denying or delaying medical care, and treating chronic pain with "gentle" over-the-counter pain relievers rather than prescription medication, he raises a claim of deliberate indifference to a serious medical need. Deliberate indifference requires proof that, objectively, the prisoner-plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure it was available. *See Farmer*, 511 U.S. at 834-37; *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008). Objectively, the medical condition at issue must be serious. *Hudson*, 503 U.S. at 9. A medical condition is serious when it is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko*, 535 F.3d at 241 (citation omitted). As for the subjective component, "[a]n official is deliberately indifferent to an inmate's serious medical needs only when he or she subjectively knows of and disregards an excessive risk to inmate health or safety." *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir.

2014) (quoting *Farmer*, 511 U.S. at 837). The subjective knowledge requirement can be met through direct evidence of actual knowledge or through circumstantial evidence tending to establish such knowledge, including evidence "that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Scinto v. Stansberry*, 841 F.3d 219, 226 (4th Cir. 2016) (quoting *Farmer*, 511 U.S. at 842).

If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844; *see also Cox v. Quinn*, 828 F.3d 227, 236 (4th Cir. 2016) ("[A] prison official's response to a known threat to inmate safety must be reasonable."). Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *See Brown v. Harris*, 240 F.3d 383, 390 (4th Cir. 2001); *see also Jackson*, 775 F.3d at 179 (physician's act of prescribing treatment raises fair inference that he believed treatment was necessary and that failure to provide it would pose an excessive risk). "[M]any acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference." *Jackson*, 775 F.3d at 178. Thus, "[d]eliberate indifference is more than mere negligence, but less than acts or omissions done for the very purpose of causing harm or with knowledge that harm will result." *Scinto*, 841 F.3d at 225 (citation and internal quotation marks omitted).

Here, Prince claims that the Medical Defendants ignored his requests for copies of his file in April 2020. However, although it appears that Prince filed sick call requests during that time, nothing in the record shows that he requested copies of his medical documents. Accordingly, the Court cannot find that the Medical Defendants were aware of the need for medical attention.

With regard to his claims that the Medical Defendants used COVID-19 as an excuse to delay treatment, Prince likewise fails to present evidence to support his assertion. As the

16

Supreme Court has recognized, "COVID–19 is a highly contagious, dangerous, and . . . deadly disease." *Biden v. Missouri*, __ U.S. __, 142 S. Ct. 647, 652 (2022). Therefore, it is not surprising that Corizon placed restrictions on medical appointments between March and June 2020, in order to contain and restrict the spread of COVID-19. Although Prince was not evaluated in person during that time, nurses and providers remained available over the phone, for virtual chart review and to renew his medications. Once the restrictions were lifted, Corizon staff continued to see Prince regularly for his chronic pain. Prince does not claim that any delay in having in-person visits exposed him to a serious or significant injury. *See Brown v. Comm'r of Cecil Cty. Jail*, 501 F. Supp. 1124, 1126 (D. Md. 1980) (delay "does not violate the Eighth Amendment where the seriousness of the injury is not apparent").

As to the Medical Defendants' decision to prescribe Elavil instead of Tramadol or Neurontin, Prince's claim fails. It is well-established that an inmate's mere disagreement with medical providers as to the proper course of treatment does not support a claim under the deliberate indifference standard. *See Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985); *Wester v. Jones*, 554 F.2d 1285 (4th Cir. 1977). Rather, a prisoner-plaintiff must show that the medical provider failed to make a sincere and reasonable effort to care for the inmate's medical problems. *See Startz v. Cullen*, 468 F.2d 560, 561 (2d Cir. 1972); *Smith v. Mathis*, PJM-08-3302, 2012 WL 253438, at * 4 (D. Md. Jan. 26, 2012), *aff'd*, 475 F. App'x 860 (4th Cir. 2012). Here, NP Adegorusi reviewed Prince's medical chart and determined that the risks presented by prescribing Tramadol and Neurontin rendered those medications inappropriate for Prince, who had a history of addiction and substance abuse. As such, Prince has not shown that NP Adegorusi was deliberately indifferent to his needs.

Lastly, Prince's claims against Corizon are also without merit. It is well established that the doctrine of respondeat superior does not apply in § 1983 claims. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (holding that there is no respondeat superior liability under § 1983). Rather, liability of supervisory officials is "premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)).

To establish supervisory liability under § 1983, a plaintiff must show that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (citations omitted). "A single act or isolated incidents are normally insufficient to establish supervisory inaction upon which to predicate § 1983 liability." *Wellington v. Daniels*, 717 F.2d 932, 936 (4th Cir. 1983) (footnote and citations omitted).

Prince has failed to plead or demonstrate sufficient facts showing supervisory indifference to, or tacit authorization of, any misconduct by NP Adegorusi or other Corizon staff. As Prince failed to show that his Eighth Amendment rights were violated in connection with his medical care, he has necessarily failed to demonstrate that Corizon authorized or was indifferent to any such violation. Moreover, Prince's assertions do not demonstrate any pattern of widespread abuse necessary to establish supervisory action or inaction giving rise to § 1983

liability. *See id.* ("Generally, a failure to supervise gives rise to § 1983 liability, however, only in those situations in which there is a history of widespread abuse."). His medical record reflects that he was routinely seen by medical staff. Thus, Corizon is entitled to summary judgment on this ground as well.

### F. Access to Courts

Construed liberally, Prince's allegation that Case Manager Jefcoat prevented him from communicating with his attorney raises an access to courts claim. A critical requirement of an access-to-courts claim is that a prisoner must show "actual injury" to "the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts." *O'Dell v. Netherland*, 112 F. 3d 773, 776 (4th Cir. 1997) (quoting *Lewis v. Casey*, 518 U.S. 343, 355 (1996)). Actual injury occurs when a prisoner demonstrates that a "nonfrivolous" and "arguable" claim was frustrated or impeded because of the denial of access to the courts. *Lewis*, 518 U.S. at 352-53 & n.3. The complaint must contain a sufficient description of the predicate claim to permit an assessment of whether it is "nonfrivolous" or "arguable." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002).

As previously stated, "COVID–19 is a highly contagious, dangerous, and . . . deadly disease," *Biden*, 142 S. Ct. at 652, and therefore, it was reasonable for the Correctional Defendants to prohibit unnecessary movement within the Division of Correction and severely restrict visitor access. In any event, Prince has not identified any claim that was frustrated, nor does he describe any actual injury that resulted from the loss of such a claim. Therefore, he has not satisfied the "actual injury" requirement and his access to courts claim fails.

IV.     **CONCLUSION**

For the foregoing reasons, the Medical and Correctional Defendants' Motions, construed as motions for summary judgment, shall be granted. As the case is not proceeding, the Medical Defendants' Motion for Extension of Time to File Reply and Prince's Motions for Default and for Appointment of Counsel shall be denied. The Motion to Strike Entry of Appearance filed by counsel for the Division of Correction shall be granted.

A separate Order follows.


Date: <u>February 28, 2022</u>                                    ____/s/_____
                                                                                GEORGE J. HAZEL
                                                                                United States District Judge